## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **ROBERT KEVIN CASHMAN and** | ) | |
| **TAMMY L. CASHMAN** | ) | **CHAPTER 11** |
| | ) | |
| Debtors | ) | **CASE NO. 12-35177** |
| | ) | |

## DEBTORS' PLAN OF REORGANIZATION
## DATED AUGUST 9, 2013
## AS ORALLY MODIFIED AT CONFIRMATION HEARING SEPTEMBER 12, 2013
### ❋ ❋ ❋   ❋ ❋ ❋   ❋ ❋ ❋
## ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code proposes to pay creditors of Robert Kevin Cashman and Tammy L. Cashman (collectively, the "Debtors") from the Debtors' future income.

This Plan provides for three (3) classes of secured claims and one (1) class of unsecured claims. Unsecured creditors holding Allowed Claims will receive cash distributions which the proponents of this Plan have valued at approximately twenty-seven (27) cents on the dollar. Holders of Allowed Priority Tax Claims will receive regular cash payments on account of such Allowed Priority Tax Claims to satisfy each such claim on or before November 23, 2017. This Plan also provides for the payment of Allowed Administrative Claims and Allowed Priority Claims in full on the Effective Date of this Plan unless the holder of such claim has, prior to the Effective Date, agreed in writing to accept periodic payments on account of its Allowed Administrative Claim or Allowed Priority Claim. All creditors should refer to Articles IV through V of this Plan for information regarding the precise treatment of their claims.

Pursuant to § 1125(f)(1) of the Bankruptcy Code and Rule 3016(b) of the Federal Rules of Bankruptcy Procedure, the Debtors – as the proponents hereof – intend for this Plan to contain relevant disclosures which provide adequate information to a hypothetical investor typical of the holders of claims in the case.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.** (If you do not have an attorney, you may wish to consult one.)

# ARTICLE II
# GENERAL PROVISIONS

2.01    <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

a.    "**Administrative Claim**" means a claim for costs and expenses of administration allowed under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the bankruptcy estate and operating the Debtor's business incurred after the Petition Date (such as wages, salaries, commissions and payments for services provided or goods accepted); (b) compensation for legal, financial advisory, accounting, and other services and reimbursement of expenses awarded or allowed by Final Order under §§ 328, 330(a) or 331 of the Bankruptcy Code; (c) any Claims allowed by Final Order pursuant to § 503(b)(9) of the Bankruptcy Code for the value of goods received by the Debtor in the twenty (20) days immediately prior to the Petition Date and sold to the Debtor in the ordinary course of business; and (d) all fees and charges assessed against the estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

b.    "**Allowed Claim**" means (i) any claim against the Debtor, proof of which was filed with the Bankruptcy Court, or (ii) if no proof of claim was filed, a claim which has been designated by the Debtor as liquidated in an amount certain and not disputed or contingent in the Debtor's Schedules or any amendments thereto. In either case, a Claim to which an objection to the allowance thereof has been raised by any party in interest is <u>not</u> an Allowed Claim until a determination is made through a Final Order from the Bankruptcy Court.

c.    "**Bankruptcy Code**" means the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

d.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Kentucky.

e.    "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as in effect at the relevant time.

f.    "**Business Day**" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

g. "**Claim**" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to any equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

h. "**Confirmation**" means the entry of an order of confirmation of the Plan by the Bankruptcy Court.

i. "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

j. "**Debtors**" means Robert Kevin Cashman and Tammy L. Cashman.

k. "**Disposable Income**" means gross monthly income received by the Debtors (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

> (A)(i) for the maintenance or support of the Debtors or a dependent of the Debtors, or for a domestic support obligation, that first becomes payable after the Petition Date; and
> (ii) for charitable contributions (that meet the definition of 'charitable contribution' under Bankruptcy Code § 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in Bankruptcy Code § 548(d)(4)) in an amount not to exceed 15 percent of gross income of the Debtors for the month in which the contributions are made; and
> (B) for the payment of expenditures necessary for the continuation, preservation, and operation of Debtors' business.

l. "**Disputed Claim**" means a Claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of Claim has been filed, and the Debtors scheduled such claim as disputed, contingent, or unliquidated.

m. "**Effective Date**" means the later of (i) the fourteenth (14th) day following the date of the entry of the Confirmation Order, or (ii) October 23, 2013. But if a stay of the Confirmation Order is in effect on that date, this term shall mean the first (1st) Business Day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.

3

n.  "**Final Order**" means an order of the Bankruptcy Court which has become final, and which may no longer be the subject of an appeal, or any certiorari or mandamus proceeding or any other order, the effectiveness of which has not been, and cannot be, stayed.

o.  "**Petition Date**" means November 23, 2012.

p.  "**Plan**" means this Plan of Reorganization and its exhibits, together with any amendments or modifications thereto as may hereafter be filed prior to Confirmation.

q.  "**Priority Claim**" means a Claim that is entitled to priority in payment pursuant to § 507(a) of the Bankruptcy Code that is <u>not</u> an Administrative Claim or a Priority Tax Claim.

r.  "**Priority Tax Claim**" means a Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

s.  "**Secured Claim**" means a Claim, including principal, interest, attorneys' fees and other amounts owing by either Debtor, secured by a lien on property of said Debtor, which lien is valid, perfected and enforceable under applicable non-bankruptcy law and not subject to avoidance under the Bankruptcy Code or such applicable non-bankruptcy law as allowed in these cases, but only to the extent that such claim is not greater than the value of the applicable Debtor's assets which the Court finds are validly encumbered as security for such claim.

2.02    <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

2.03    <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

2.04    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

2.05    <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the Commonwealth of Kentucky govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

4

2.06    <u>Payment Due Dates</u>.  Any payment due under the Plan, Confirmation Order, or any instrument executed in connection with the Confirmation Order for which the due date falls on a date which is not a Business Day shall become due on the first (1st) Business Day immediately following said due date. Any payment due under the Plan, Confirmation Order, or any instrument executed in connection with the Confirmation Order for which the due date falls on a date preceding the Effective Date shall become due on the Effective Date.

## ARTICLE III
## <u>INITIAL DISCLOSURES</u>

3.01    <u>History of the Debtors</u>.  The Debtors are married individuals who reside in Breckinridge County, Kentucky.  The Debtors utilize their land in a small farming operation to generate income through crops, cattle, and custom hay bailing.  In addition to their farm operations, each of the Debtors maintains employment outside the home – Mr. Cashman earns wages as an employee of Multi-Metals, and Mrs. Cashman is a substitute teacher in the Breckinridge and Meade County school systems.  Mrs. Cashman also earns a small stipend for services to her church and the county fair board.

3.02    <u>Events Leading to Chapter 11 Filing</u>.  The Debtors sought protection of the Bankruptcy Court to obtain an injunction against the foreclosure sale of their residence and surrounding real property by creditor South Central Bank of Hardin County ("<u>South Central</u>"). Prior to initiation of the foreclosure suit, the Debtors defaulted on their payment obligations to South Central and other creditors due to Mr. Cashman's diminished capacity to perform his employment obligations and farming operations following multiple serious car accidents.

3.03    <u>Commencement of the Chapter 11 Cases</u>.  These cases were commenced on November 23, 2012, upon the filing of a voluntary petition for relief. At all times herein, the Debtors have continued to earn income and manage their assets as debtors in possession. No committees of any kind have been appointed during this case, and no request for the appointment of a trustee or examiner has yet been made.

3.04    <u>Post-Petition Operations</u>.    A summary of the Debtors' monthly operating reports filed since the commencement of this bankruptcy case is set forth in **Exhibit A**.

3.05    <u>Projected Recovery of Avoidable Transfers</u>. The Debtors have reviewed their financial records and accounts in light of their powers and duties as debtors in possession.  Based on this review, the Debtors do not intend to pursue preference, fraudulent conveyance or other avoidance actions at this time, but said avoidance actions shall not be waived or abandoned until the Effective Date.  The Debtors believe that their granting of security interests in livestock to creditor Miles Enterprises LLC ("<u>Miles</u>") prior to the Petition Date is avoidable pursuant to Bankruptcy Code § 547, but will be deemed to have abandoned said action upon occurrence of the Effective Date.

3.06    <u>Claims Objections</u>.    Except to the extent that a Claim is already allowed pursuant to a Final Order, the Debtors reserve their right to object to Claims.  Therefore, even if your Claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your Claim is later upheld.  The procedure for resolving disputed claims is set forth in Article VII below.

3.07    <u>Tax Consequences of Plan</u>.

---

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, the Plan Proponents inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

3.07.1 *Disclaimer* - The description that follows does not cover all aspects of federal income taxation that may be relevant to the Debtors or holders of claims.  This description is not a substitute for careful tax planning and professional tax advice based upon the individual circumstances of each holder of a claim or an interest.    Holders of claims and interests are urged to consult with their own tax advisors regarding the federal, state, local and foreign tax consequences of the plan.

3.07.2 *Payment of Allowed Claims Pursuant to Plan* - The federal income tax consequences of the implementation of the Plan to the holders of Allowed Claims will depend, among other things, on the consideration to be received by the holder, whether the holder reports income on the accrual or cash method, whether the holder receives distributions under the Plan in more than one taxable year, whether the holder's claim is allowed or disputed on the Effective Date, and whether the holder has taken a bad debt deduction or worthless security deduction with respect to its claim.

3.07.2.1    **Recognition of Gain or Loss**        In general, a holder of an Allowed Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its claim less the holder's tax basis in the claim.  Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Allowed Claim and the holder, the length of time the holder held the claim and whether the claim was acquired at a market discount.  If the holder realizes a capital loss, the holder's deduction of the loss may be subject to limitation.  The holder's tax basis for any property received under the Plan generally will equal the amount realized.  The holder's amount realized generally will equal the sum of the cash and the fair market value of any other property received by the holder under the Plan on the Effective Date or a subsequent distribution date, less the amount (if any) treated as interest, as discussed below.

3.07.2.2    **Post-Effective Date Distributions**    Because        certain holders of Allowed Claims, including Disputed Claims that ultimately become Allowed Claims, may receive cash distributions after the Effective Date, the imputed interest provisions of the Internal Revenue Code may apply and cause a portion of the subsequent distribution to be treated

as interest.  Additionally, because holders may receive distributions with respect to an Allowed Claim in a taxable year or years following the year of the initial distribution, any loss and a portion of any gain realized by the holder may be deferred. All holders of Allowed Claims are urged to consult their tax advisors regarding the possible application of (or ability to elect out of) the "installment method" of reporting with respect to their claims.

3.07.2.3      **Receipt of Interest**    Holders of Allowed Claims will recognize ordinary income to the extent that they receive cash or property that is allocable to accrued but unpaid interest which the holder has not yet included in its income. If an Allowed Claim includes interest, and if the holder receives less than the amount of the Allowed Claim pursuant to the Plan, the holder must allocate the Plan consideration between principal and interest.  The holder may take the position that the amounts received pursuant to the Plan are allocable first to principal, up to the full amount of principal, and only then to interest. However, the proper allocation of Plan consideration between principal and interest is unclear and holders of Allowed Claims should consult their own tax advisors in this regard. If the Plan consideration allocable to interest with respect to an Allowed Claim is less than the amount that the holder has previously included as interest income, the previously included but unpaid interest may be deducted, generally as a loss.

3.07.2.4  **Bad Debt or Worthless Securities Deduction**    A holder who receives in respect of an Allowed Claim an amount less than the holder's tax basis in the Claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under Section 166(a) of the Internal Revenue Code or a worthless securities deduction under Section 165(g) of the Internal Revenue Code. The rules governing the character, timing and amount of bad debt and worthless securities deductions place considerable emphasis on the facts and circumstances of the holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

# ARTICLE IV
## CLASSIFICATION OF CLAIMS

4.01    Class 1.        Class 1 consists of all Allowed Priority Claims against either of the Debtors. Upon the Plan Proponents' information and belief, as of the date this Plan is proposed, there are no known holders of Class 1 Claims.

4.02    Class 2-A.    Class 2-A consists of the Claim arising from Debtors' outstanding obligations under the terms of that certain promissory note dated July 30, 2007, by the Debtors to the order of South Central in the face principal amount of $261,574.00, as modified by that certain Note Modification Agreement dated June 15, 2009 (the "South Central Note"), to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code.  The collateral securing the Class 2-A

7

Claim consists of a first priority mortgage on the real property owned by the Debtors and commonly identified as 8118 Highway 477, Webster, Kentucky 40176 and 7996 Highway 477, Webster, Kentucky 40176 (the "Real Property") and recorded in the Office of the Clerk of Breckinridge County, Kentucky in Mortgage Book 330, Page 19 on August 7, 2007 (the "Class 2-A Mortgage"). The value of the Class 2-A Claim holder's interest in the Real Property is $271,000.00. Upon the Plan Proponents' information and belief, as of the date this Plan is proposed, South Central is the holder of the Class 2-A Claim.

4.03    Class 2-B.    Class 2-B consists of the Allowed Claim arising from Debtors' outstanding obligations under the terms of those certain promissory notes dated August 24, 2009 made by the Debtors to the order of the United States Department of Agriculture, Farm Service Agency (the "FSA"), in the cumulative face principal amount of $20,589.42 (collectively, the "FSA Notes"), to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing the Class 2-B Claim consists of a second priority mortgage on the Real Property and recorded in the Office of the Clerk of Breckinridge County, Kentucky in Mortgage Book 356, Page 232 on August 24, 2009, (the "Class 2-B Mortgage") and a first priority security interest in all of the Debtors' crops, farm equipment, cattle, and FSA program payments as recorded with the Kentucky Secretary of State on April 18, 2008 and continued on November 14, 2012 (the "Class 2-B Security Interest," and collectively with the Class 2-B Mortgage, the "Class 2-B Collateral"). For purposes of this Plan, the Class 2-B Claim is fully secured by the Class 2-B Security Interest. Upon the Plan Proponents' information and belief, as of the date this Plan is proposed, the FSA is the holder of the Class 2-B Claim.

4.04    Class 2-C.    Class 2-C consists of the Allowed Claim arising pursuant to the judgment entered against Mr. Cashman by the Daviess County Circuit Court in favor of Miles in civil action number 11-CI-01622, (the "Miles Judgment"), to the extent allowed as a Secured Claim under § 506 of the Bankruptcy Code. The collateral securing the Class 2-C Claim consists of a third priority judicial lien on the Real Property and recorded in the Office of the Clerk of Breckinridge County, Kentucky in Encumbrance Book 29, Page 416 on February 11, 2012 (the "Class 2-C Judicial Lien"), and a second priority security interest in Mr. Cashman's interest in livestock and equipment (the "Class 2-C Security Interest," and collectively with the Class 2-C Judicial Lien, the "Class 2-C Liens"). For purposes of this Plan, the value of Miles' interest in

Mr. Cashman's interest in the Real Property and all livestock and equipment is $5,000.00

4.05    Class 2-D.    Class 2-D consists of the Allowed Claims of Aurora Oil & Gas Corporation ("Aurora") and Piper Services Corporation ("Piper"), to the extent allowed as Secured Claims under § 506 of the Bankruptcy Code.  Upon the Plan Proponents' information and belief, the Debtors owe no payment obligations to Aurora or Piper, but the Real Property is subject to utility easements in favor of Aurora and Piper (the "Utility Easements").

4.06    Class 3.    Class 3 consists of all Allowed Claims against either or both Debtors which are not Administrative Claims, Priority Claims, Priority Tax Claims, Secured Claims or Claims required to be paid in order to cure either Debtors' default of an unexpired lease or executory contract that is to be assumed by such Debtor as set forth in Article VIII of the Plan. Upon the Plan Proponents' information and belief, as of the date this Plan is proposed, the holders of Class 3 Claims are:

*Joint Liabilities*

| Claimant | Amount |
|---|---|
| Allen Adkisson | $1,000.00 |
| Greg Adkisson | $1,000.00 |
| Darline Livers | $3,500.00 |
| Jean Cashman | $5,000.00 |
| Monica Brown | $3,000.00 |
| South Central (deficiency claim) | $38,191.36 |
| St. Mary Magdalene of Pazzi | $3,800.00 |
| Teresa Livers | $3,000.00 |
| Tim Adkisson | $1,000.00 |
| Tommy Hall | $10,300.00 |
| **TOTAL:** | **$69,791.36** |

*Mr. Cashman's Liabilities*

| Claimant | Amount |
|---|---|
| Hardin Professional Services | $27.08 |
| Harrison County Hospital | $200.00 |

9

| | |
|---|---|
| Miles (deficiency claim) | $11,475.98 |
| Nelnet on behalf of U.S. Dept of Education | $10,545.72 |
| **TOTAL:** | **$22,248.78** |

*Mrs. Cashman's Liabilities*

| Claimant | Amount |
|---|---|
| Hardin Professional Services | $228.00 |
| Harrison County Hospital | $200.00 |
| **TOTAL:** | **$428.00** |

### TOTAL CLASS 3 CLAIMS:            $92,468.14

### ARTICLE V
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
### U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

5.01    Unclassified Claims.  Pursuant to § 1123(a)(1) of the Bankruptcy Code, this Plan does not designate classes for Allowed Administrative Claims and Allowed Priority Tax Claims that are not also Allowed Secured Claims.

5.02    Administrative Claims.    Except to the extent that the holder of a particular Administrative Claim allowed pursuant to § 503 of the Bankruptcy Code has agreed to alternative treatment of its Claim, each holder of an Allowed Administrative Claim will receive the following treatment:

| Type | Estimated Amount Owed | Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved, or to be approved, by the Bankruptcy Court | $10,000.00 | Paid in full on the Effective Date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Bankruptcy Court on the Effective Date of the Plan |
| Expenses deemed to have been actual and necessary to preservation of the estate | $0.00 | Paid in full on the Effective Date of the Plan, or according to separate written agreement. |
| Clerk's Office Fees | [NONE] | Paid in full on the Effective Date of the Plan |

| Other administrative expenses | [NONE] | Paid in full on the Effective Date of the Plan or according to separate written agreement |
|---|---|---|
| Office of the U.S. Trustee Fees | $325.00 | Paid in full on the Effective Date of the Plan |
| **TOTAL** | **$10,325.00** | |

5.03    Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim has agreed, in writing, to alternative treatment, each will receive regular installment payments, in cash, in an amount sufficient to satisfy its Priority Tax Claim, plus interest accruing at the applicable statutory rate, on or before November 23, 2017.  Upon the Plan Proponents' information and belief, as of the date this Plan is proposed, there are no Allowed Priority Tax Claims against the Debtors.

5.04    United States Trustee Fees.  All fees required to be paid pursuant to 28 U.S.C. §1930(a)(6)  ("U.S. Trustee Fees") will be determined by the Bankruptcy Court at the hearing on Confirmation.  Any U.S. Trustee Fees owed on or before the Effective Date will be paid on the Effective Date.  All U.S. Trustee Fees will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  U.S. Trustee fees will not accrue in the period between closing of the case following Confirmation and reopening of the case for entry of the discharge upon completion of all Plan payments.

## ARTICLE VI
## TREATMENT OF CLAIMS UNDER THE PLAN

Claims shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims | Unimpaired | Each holder of a Class 1 Claim will be paid in full, in cash, upon the later of the Effective Date or the date on which such Claim is allowed by a Final Order. |
| Class 2-A – Secured Claim of South Central | Impaired | The holder of the Class 2-A Claim will have its Secured Claim satisfied in full on the Effective Date through delivery of a promissory note executed by the Debtors in a form and substance substantially similar to the note attached to the Plan as **Exhibit B** (the "Restructured 2-A Note").  The Class 2-A Mortgage shall remain on the Real Property until the Restructured 2-A Note is paid in full.<br><br>In order to preserve the priority and efficacy of the Class 2-A Mortgage, prior to the Effective Date the Debtors and the holder of the Class 2-A Claim may, without further Order from the Court, agree to modify the structure of the transaction contemplated by the Plan and/or those terms of the Restructured 2-A Note not affecting the payment terms identified in Exhibit B. |

11

| Class 2-B – Secured Claim of FSA | Impaired | The holder of the Class 2-B Claim will have its Secured Claim satisfied in full on the Effective Date through delivery of a promissory note executed by the Debtors in a form and substance substantially similar to the note attached to the Plan as **Exhibit C** (the "<u>Restructured 2-B Note</u>" and collectively with the Restructured 2-A Note, the "<u>Restructured Notes</u>").  The Class 2-B Mortgage shall be released upon delivery of the Restructured 2-B Note, but in no event shall the Class 2-B Mortgage be released prior to the release or avoidance of the Class 2-C Judicial Lien in accordance with the treatment provisions set forth below.  The Class 2-B Security Interest shall remain on the Debtors' crops, farm equipment, cattle, and FSA program payments until the Restructured 2-B Note is paid in full. |
|---|---|---|
| Class 2-C – Secured Claim of Miles | Impaired | The holder of the Class 2-C Claim will have its Secured Claim satisfied in full on the Effective Date through a cash payment in the amount of $5,000.00.  The Class 2-C Liens shall be released immediately upon payment provided for herein. |
| Class 2-D – Utility Easements | Unimpaired | Entry of the Confirmation Order shall not affect the rights of holders of Utility Easements on the Real Property. |
| Class 3 - General Unsecured Claims | Impaired | Between the Effective Date and the date that is thirty-six (36) months after the Effective Date, the Debtors will make available their Disposable Income for distributions to all holders of Class 3 Claims.  Commencing twelve (12) months after the Effective Date, and continuing annually thereafter, each holder of an Allowed Class 3 Claim will receive cash payments representing that claimant's pro-rata share of the Debtors' accumulated Disposable Income.<br><br>Provided, however, that holders of Class 3 Claims shall receive no less than their *pro rata* portion of the Minimum Distribution in accordance with Section 9.03.1 of this Plan. |

## ARTICLE VII
## <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

7.01   <u>Proofs of Claim Filed</u>.  Notwithstanding the presumption of allowance of claims and interests for which proof has been filed, the Debtors hereby reserve their right pursuant to § 502 of the Bankruptcy Code and Bankruptcy Rule 3007 to object to, and seek disallowance of, any proof of claim which the Debtors believe is not an accurate statement of obligations owed to the holder of such Claim. The Debtors will continue to review their books and records to verify that creditors filing proofs of claim herein assert valid rights to payments against the bankruptcy estates. If a Debtor or another party in interest objects to the allowance of a proof of claim that has been filed, said Claim is a Disputed Claim and therefore not entitled to distributions under this Plan unless and until a determination is made by a Final Order of the Bankruptcy Court.

7.02    <u>Proofs of Claim Not Filed</u>.  If either Debtor scheduled a Claim as disputed, contingent or unliquidated, and no proof of claim has been filed, said Claim is a Disputed Claim subject to being discharged pursuant to Article X of this Plan. If an entity subsequently files a proof of claim related to a Disputed Claim, the Debtors shall have the opportunity to object to the allowance of said Disputed Claim.

7.03    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a Disputed Claim unless such Claim becomes an Allowed Claim by a Final Order or a written agreement by the Debtors which is approved by the Bankruptcy Court under Section 7.04 of this Plan.

7.04    <u>Settlement of Disputed Claims</u>.  The Debtors will retain the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Rule 9019 of the Bankruptcy Rules.

# ARTICLE VIII
# <u>PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

8.01    <u>Assumed Executory Contracts and Unexpired Leases</u>.    The Debtors will assume the following executory contracts and/or unexpired leases effective upon the date of the entry of the Confirmation Order:

| <u>Non-Debtor Counterparty</u> | <u>Nature of Contract or Lease</u> | <u>Cure Payment</u> |
|---|---|---|
| Judy Collins | Lease of 50 acres farmland.  Debtors are lessees. | $0.00 |

The Debtors hereby reserve the right to amend this Table 8.01 at any time prior to the Effective Date.

8.02    <u>Rejected Executory Contracts and Unexpired Leases</u>. The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 8.01 above, on the date of entry of the Confirmation Order. To be eligible to be an Allowed Claim, a proof of claim arising from an executory contract or unexpired lease rejected under this section must be filed no later than twenty-eight (28) days after entry of the Confirmation Order. Notwithstanding the foregoing sentence, the Debtors shall retain the right to object to any proof of claim arising from the rejection of any executory contract or unexpired lease.

# ARTICLE IX
# <u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>

9.01    _Post-Confirmation Operations_.  Upon the Effective Date, the Debtors will retain all property of their respective estates and continue to use it in the operation of their farming business and management of their household affairs.  As suggested in the Debtors' financial projections submitted with this Plan as **Exhibit D**, the Debtors expect their post-Confirmation operations will generate revenues sufficient to satisfy and discharge both their post-petition obligations and those Claims treated in the Plan.  The Debtors anticipate an increase in income from farming operations due to Mr. Cashman's improved health and physical condition, as well as the purchase of new farm equipment to increase productivity and efficiency.

9.02    _Retention of Avoidance Actions_.  Following Confirmation, the Debtors, as debtors in possession, shall retain sole and exclusive authority and discretion to pursue avoidance of transfers which may be void or voidable under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 and/or applicable state law.  Notwithstanding the foregoing, all avoidance actions which could be brought against Miles shall be released and forever barred upon release of the Class 2-C Liens in accordance with this Plan and the Confirmation Order.

9.03    _Accrual and Distribution of Disposable Income_.    Between entry of the Confirmation Order and the Effective Date, the Debtors will transfer the balance of funds from the savings account maintained at Fifth Third Bank, less the required minimum deposit to avoid penalties or fees from Fifth Third Bank, to a bank account of their choice.[1]  The Fifth Third Bank savings account shall thereafter serve as the account in which the Debtors will deposit their Disposable Income and make all required distributions to holders of Class 3 Claims (the "_Disbursement Account_") during the administration of the Plan.  Between the Effective Date and entry of the Discharge Order, the Debtors will maintain financial records sufficient to provide information for completion of forms substantially similar to Official Forms 6I and 6J for the preceding calendar month, and the amount shown as "net income" for that month shall be presumed to be the Debtors' Disposable Income for the applicable period.  On or before the fifteenth (15th) day following the end of the preceding calendar month, the Debtors will deposit an amount equal to their Disposable Income, if any, to the Disbursement Account.  The Debtors will not withdraw funds from the Disbursement Account except for the sole purposes of (a) making required pro-rata distributions to holders of Class 3 claims, and (b) meeting reasonable and necessary household or business expenses for their farming operation including, without limitation, maintenance, fertilizer, veterinary care and other ordinary course expenditures.  In the event that the Debtors withdraw funds from the Disbursement Account to meet reasonable and necessary household or business expenses, said withdrawal shall be recorded as income on the form substantially similar to Official Form 6I for the month in which said withdrawal was taken.

9.03.1 _Minimum Distribution_ - Notwithstanding anything in the Plan to the contrary, between the Effective Date and the Date that is thirty-six (36) months after the Effective Date, the Debtors shall make a sum total of $7,500.00 (the "_Minimum Distribution_") available for _pro rata_ distributions to all holders of Class 3 Claims. The Debtors, in their sole

---

[1] The Confirmation Order shall provide that, notwithstanding post-confirmation comingling of the exempt funds in the Fifth Third account with non-exempt of the estates, said funds shall not be recharacterized as property of the Debtors' bankruptcy estates.

and absolute discretion, shall determine the frequency and timing of distributions to be made to holders of Class 3 Claims under the Plan, with the sole limitation being that the cumulative amount of all distributions made under this paragraph shall be not less than:

      a.  $2,500.00 for the period between the Effective Date and the date that is twelve (12) months after the Effective Date;

      b.  $2,500.00 for the period between the date that is thirteen (13) months after the Effective Date and twenty-four (24) months after the Effective Date; and

      c.  $2,500.00 for the period between the date that is twenty-five (25) months after the Effective Date and thirty-six (36) months after the Effective Date.

Provided, however, that the amounts described in subparagraphs (a) through (c) above shall be reduced, dollar-for-dollar, in the event that the Debtors "pre-pay" any portion of the Minimum Distribution under this Section 9.03.1.

      9.03.2 *Financial Reporting* – Commencing twelve (12) months following the Effective Date, and continuing annually thereafter through the thirty-sixth (36th) month following the Effective Date, the Debtors shall distribute copies or a summary of the completed forms used to calculate their Disposable Income for the immediately preceding twelve (12) month period to each holder of a Class 3 Claim.

      9.03.3 *Creditor Requests for Additional Reports* - Beginning on the date that is six (6) months after the Effective Date and continuing in intervals no more frequent than six months therefrom, any holder of a Class 3 Claim may make a written request to the Debtors for copies of the previous six (6) months of the Debtors' financial records completed for the purpose of determining the Debtors' Disposable Income for the corresponding period. The Debtors shall comply with any such request within thirty (30) days of receipt thereof.

      9.04  Post-Confirmation Financing.  As of the date this Plan is proposed, the Debtors have not solicited or negotiated any arrangements for additional borrowing or financing from any other party, nor is their performance of obligations contemplated by this Plan premised upon obtaining any additional financing after Confirmation. Nevertheless, entry of the Confirmation Order shall be deemed to be authorization for the Debtors to borrow money – whether to fund operations, refinance obligations arising under the Plan, finance capital purchases, or for any other purpose – without further review or approval from the Bankruptcy Court.

## ARTICLE X
## DISCHARGE

      10.01  Discharge of Debtors.  Confirmation of the Plan does not discharge any debt provided for in the Plan until the Bankruptcy Court grants a discharge upon completion of all

payments under the Plan[2] or as otherwise provided in § 1141(d)(5) of the Bankruptcy Code. Debtors will not be discharged from any debt excepted from discharge under § 523 of the Bankruptcy Code, except as provided in Bankruptcy Rule 4007(c).

10.02  <u>Continuing Injunction</u>.  Upon entry of the Confirmation Order, all holders of claims against the Debtors, including holders of Disputed Claims, shall be barred and enjoined from any attempt to assess, demand or collect from the Debtors any indebtedness arising on or before the Petition Date, unless specifically authorized by the Bankruptcy Court.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction of this chapter 11 case pursuant to the provisions of the Bankruptcy Code until the Debtors' case is closed, and shall further retain jurisdiction with respect to the following matters:

a.   to classify, allow or disallow Claims, direct distributions under the Plan, and adjudicate all controversies concerning classification or allowance of any Claim against, or interest in, the Debtors;

b.   to enforce performance of the Plan against the Debtors, all claimants or any other entity;

c.   to hear and determine all Claims arising from the rejection of executory contracts and unexpired leases, and to consummate the rejection and termination thereof, and to hear and determine all matters relating to the assumption of executory contracts and unexpired leases and the assumption and assignment of executory contracts and unexpired leases;

d.   to liquidate damages or estimate Allowed Claims in connection with any Disputed Claims;

e.   to adjudicate all claims to an ownership interest in any property of the Debtors or of the estates or any proceeds thereof;

f.   to adjudicate all claims or controversies arising out of any purchase, sale or contract made or undertaken by the Debtors during the pendency of this chapter 11 case;

---

[2] Debtors' delivery of the Restructured Notes shall constitute "payment" of the respective pre-petition debts under the Plan.   Accordingly, entry of the Order Discharging Debtors shall not impair the rights of the respective holders of the Restructured Notes.

g.      to recover all assets and properties of the Debtors, wherever located;

h.      to hear and determine matters concerning state, local and federal taxes pursuant to §§ 345, 505, 525 and 1146 of the Bankruptcy Code;

i.      to hear and determine any action or proceeding brought by a Debtor under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code;

j.      to hear and determine all actions and proceedings brought by a Debtor arising in or related to this chapter 11 case, or otherwise arising under the Bankruptcy Code;

k.      to determine the validity, extent and priority of all liens against property of the Debtors' estates;

l.      to consider any modification of the Plan under § 1127 of the Bankruptcy Code and/or modification of the Plan after substantial consummation thereof;

m.      to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Plan;

n.      to hear and determine all requests for compensation and/or reimbursement of expenses that may be made after the date of Confirmation; and

o.      to hear and determine such matters and make such orders consistent with the Plan as may be necessary or desirable to carry out the provisions thereof.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of this chapter 11 case, including the matters set forth herein, or if a Debtor elects to bring an action in any other forum, this Article shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XII
## RESERVATION OF RIGHTS

The filing of the Plan, any statement or provision contained herein, or any action taken by any creditor with respect to the Plan shall not be, or be deemed to be, (i) an admission against interest nor (ii) a waiver of any rights which Debtors may have against any entity, or which any creditor may have against the Debtors, Debtors' property or any other creditor may have against any entity. All such rights are specifically reserved until entry of the Confirmation Order. The

17

Debtors reserve the right to object to Claims. In the event that no Confirmation Order is entered, neither this Plan nor any statement contained herein or action taken in connection therewith may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the reorganization cases involving these Debtors.

## ARTICLE XIII
## CRAMDOWN

Debtors, as the proponents of the Plan, hereby request that the Bankruptcy Court find that the Plan provides fair and equitable treatment of the impaired classes of claims and interests, and, if such classes do not accept the Plan, that the Bankruptcy Court confirm the Plan notwithstanding section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE XIV
## RECOMMENDATION AND CONCLUSION

It is Debtors' position that this Plan is substantially preferable to liquidation under chapter 7 of the Bankruptcy Code. Debtors believe that the Plan fairly and equitably provides for the treatment of all valid claims against the Debtors. **The Debtors recommend and urge all creditors to vote to accept this Plan.**

IN WITNESS WHEREOF, the Debtors have submitted this amended Plan of Reorganization this 30th day of September, 2013.

DEBTORS AND DEBTORS IN POSSESSION

/s/ Robert Kevin Cashman
ROBERT KEVIN CASHMAN

/s/ Tammy L. Cashman
TAMMY L. CASHMAN

18

/s/ Tyler R. Yeager
TYLER R. YEAGER
SEILLER WATERMAN LLC
Meidinger Tower, 22nd Floor
462 South 4th Street
Louisville, Kentucky  40202
Telephone: (502) 584-7400
Facsimile: (502) 583-2100
E-mail: yeager@derbycitylaw.com
*Counsel for Debtors*

G:\doc\DMC\Cashman, Robert & Tammy\Pldgs\Ord Conf - Ex A - Amd Plan of Reorg.doc

**Robert Kevin Cashman & Tammy L. Cashman**
**Summary of Post-Petition Operations**
**Plan of Reorganization - Exhibit A**

| | Dec. 2012 | Jan. 2013 | Feb. 2013 | Mar. 2013 | Apr. 2013 | May.2013 | Jun. 2013 |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| Gross Wages, Salary, and Commissions | $ 4,746.64 | $ 6,796.45 | $ 5,205.47 | $ 4,641.65 | $ 6,435.64 | $ 5,665.64 | $ 4,282.10 |
| Farm Income | 720.00 | 720.00 | 1,050.00 | 3,971.76 | 500.00 | 957.00 | 6,873.76 |
| TOTAL: | $ 5,466.64 | $ 7,516.45 | $ 6,255.47 | $ 8,613.41 | $ 6,935.64 | $ 6,622.64 | $ 11,155.86 |
| | | | | | | | |
| **Expenses** | | | | | | | |
| Payroll Deductions | $ 1,177.77 | $ 1,855.99 | $ 1,482.41 | $ 1,300.73 | $ 1,780.15 | $ 1,640.11 | $ 1,345.01 |
| Mortgage/Adequate Protection | $ - | $ - | $ - | $ - | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| Electricity and heating fuel | 565.27 | 180.63 | 242.90 | 504.38 | 129.66 | 110.13 | 104.73 |
| Water and Sewer | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Telephone | 146.61 | 129.52 | 129.27 | 129.27 | 129.27 | 141.21 | 129.61 |
| Home Maintenance | $ - | $ - | $ - | $ - | $ - | $ - | 85.18 |
| Food | 192.12 | 424.36 | 508.97 | 659.66 | 356.05 | 613.89 | 677.05 |
| Clothing | $ - | 72.95 | $ - | $ - | $ - | $ - | $ - |
| Laundry and dry cleaning | $ - | 18.68 | $ - | $ - | 64.18 | $ - | $ - |
| Medical and dental expenses | 130.00 | 132.40 | 81.17 | 517.51 | 63.56 | 100.00 | 53.79 |
| Transportation | 578.00 | 703.09 | 1,623.86 | 570.87 | 507.10 | 405.90 | 508.44 |
| Recreation and entertainment | 100.00 | $ - | 157.28 | 250.00 | 150.00 | $ - | 129.00 |
| Charitable contributions | $ - | $ - | $ - | $ - | $ - | 25.00 | 40.00 |
| Home Insurance | 77.71 | 77.71 | 77.71 | 77.71 | 98.22 | 98.23 | 98.23 |
| Life Insurance | $ - | $ - | 110.00 | 110.00 | 111.00 | 111.55 | 110.00 |
| Health Insurance | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Auto Insurance | $ 292.24 | 433.64 | 433.64 | 432.62 | 462.13 | 462.14 | 547.85 |
| Farm Insurance | | 48.01 | 48.01 | | | | |
| Taxes (not deducted from payroll) | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Alimony, maintenance and support | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Payments for support of add'l dependents | $ - | $ - | 200.00 | 200.00 | 200.00 | 1,500.00 | $ - |
| Farm expenses | 5,028.10 | 6,151.54 | 1,197.96 | 1,948.32 | 4,152.15 | 3,460.93 | 4,833.51 |
| Other | 832.77 | $ - | $ - | $ - | $ - | 634.94 | |
| TOTAL | $ 9,120.59 | $ 10,228.52 | $ 6,293.18 | $ 6,701.07 | $ 9,703.47 | $ 10,804.03 | $ 10,162.40 |
| | | | | | | | |
| NET INCOME: | $ (3,653.95) | $ (2,712.07) | $ (37.71) | $ 1,912.34 | $ (2,767.83) | $ (4,181.39) | $ 993.46 |

# NOTE

_____, _____                        Webster,                    Kentucky
              [Date]                                                    [City]                          [State]

_____
8118 Highway 477, Webster, Kentucky 40176
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In accordance with the Order of Confirmation entered in *In re: Robert Kevin Cashman and Tammy L. Cashman,* Case No. 12-35177, by the U.S. Bankruptcy Court for the Western District of Kentucky, I promise to pay U.S. $271,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is South Central Bank of Hardin County, Inc.  I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of 4.50%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on October 1, 2013.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2023, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at South Central Bank, P.O. Box 1150, Elizabethtown, KY 42702-1150 or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,506.31.

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

    (i)   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (ii)   If I do not maintain insurance against damage by fire or other hazards covered by a standard extended-coverage insurance policy on the property securing my obligations under this Note, I will be in default.

    **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees incurred in the enforcement of this Note.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Real Estate Mortgage (the "Security Instrument") dated July 30, 2007, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. If all or any part of the property securing any obligations under this Note is sold or transferred without Lender's prior written consent, Lender may require immediate payment of the full amount of Principal which has not been paid and all the interest that I owe on that amount. To the extent that any language contained in this Note is interpreted to create a conflict or ambiguity with the Security Instrument, the terms of this Note shall prevail.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Robert Kevin Cashman - Borrower

_____(Seal)
Tammy L. Cashman - Borrower

*[Sign Original Only]*

This form is available electronically.

*Form Approved - OMB No. 0560-0237*
*(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)*

| FSA-2026 | U.S. DEPARTMENT OF AGRICULTURE | Position 2 |
|---|---|---|
| (12-05-12) | Farm Service Agency | |

## PROMISSORY NOTE

| 1. Name Robert Kevin Cashman and Tammy L. Cashman | 2. State Kentucky | 3. County Breckinridge |
|---|---|---|

| 4. Case Number | 5. Fund Code | 6. Loan Number | 7. Date August 23, 2013 |
|---|---|---|---|

**8. TYPE OF ASSISTANCE**

**9. ACTION REQUIRING PROMISSORY NOTE:**

- [ ] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [X] Rescheduling
- [ ] Debt write down
- [ ] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *a)* Hardinsburg, KY  40143 or at such other place as the Government may later designate in writing, the principal sum of *(b)* Twelve Thousand Five Hundred Sixty-Four and 89/100 -- ------------------- dollars *(c)* ($ 12,564.89 , plus interest on the unpaid principal balance at the **RATE** of *(d)* two and three-eights -------------------------- percent *(e)* 2.375 %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11.  Principal and interest shall be paid in *(a)* 12 installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 1,215.00 | 8/23/2013 | $ | |
| $ | | $ | |
| $ | | $ | |
| $ | | $ | |

and *(d)* $ 1,215.00 thereafter on the *(e)* 23rd of August of each *(f)* year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* 11 years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.*

Initial _____ Date _____

**FSA-2026** (12-05-12)                                                                                    Page 2 of 3

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>*(MM-DD-YYYY)* | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>*(MM-DD-YYYY)* |
|---|---|---|---|---|---|
| 44/08 | $ 14,924.95 | 2.375  % | 08-24-2009 | Robert Kevin Cashman<br>Tammy L. Cashman | 08-24-2024 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _____   Date _____

**FSA-2026** (12-05-12)                                                                                       Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**


_____          _____
Robert Kevin Cashman                       Tammy L. Cashman
8118 Highway 477
Webster, KY  40176

NOTE:   *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

**Robert Kevin Cashman & Tammy L. Cashman**
**Financial Projections**
**Plan of Reorganization - Exhibit D**

| | | 2013 | 2014 | 2015 |
|---|---|---|---|---|
| **Income** | | | | |
| | Sale of Calves | $ 13,750 | $ 16,500 | $ 19,250 |
| | Sale of Hay | $ 2,500 | $ 3,750 | $ 3,750 |
| | Custom Baling | $ 7,250 | $ 8,700 | $ 9,000 |
| | Non-Farm Income | $ 60,000 | $ 60,000 | $ 65,000 |
| | **TOTAL:** | **$ 83,500** | **$ 88,950** | **$ 97,000** |
| | | | | |
| **Expenses** | | | | |
| | Fertilizer | $ 4,500 | $ 4,950 | $ 5,445 |
| | Fuel | $ 8,000 | $ 8,800 | $ 9,680 |
| | Insurance | $ 7,200 | $ 7,920 | $ 8,712 |
| | Feed | $ 900 | $ 990 | $ 1,089 |
| | Health Insurance | $ 6,000 | $ 6,600 | $ 7,260 |
| | Electricity | $ 3,600 | $ 3,960 | $ 4,356 |
| | Cell Phones | $ 1,920 | $ 2,112 | $ 2,323 |
| | Home Phone | $ 1,548 | $ 1,703 | $ 1,873 |
| | Food | $ 4,800 | $ 5,280 | $ 5,808 |
| | Clothing | $ 300 | $ 330 | $ 363 |
| | Entertainment | $ 1,200 | $ 1,320 | $ 1,452 |
| | Parts | $ 4,500 | $ 4,950 | $ 5,445 |
| | Supplies | $ 2,500 | $ 2,750 | $ 3,025 |
| | | $ 46,968 | $ 51,665 | $ 56,831 |
| | | | | |
| **Debt Service** | | | | |
| | Administrative Claims | $ 10,325 | $ - | $ - |
| | South Central | $ 13,650 | $ 18,600 | $ 18,600 |
| | FSA | $ 1,215 | $ 1,215 | $ 1,215 |
| | Miles | $ 5,000 | $ - | $ - |
| | | $ 30,190 | $ 19,815 | $ 19,815 |
| | | | | |
| **Capital Expenditures** | | | | |
| | Cows | $ 15,000 | $ 7,500 | $ 7,500 |
| | Haymower | $ 3,900 | $ - | $ - |
| | Van | $ 7,000 | | |
| | Bull | $ 2,000 | $ - | $ - |
| | | $ 27,900 * | $ 7,500 | $ 7,500 |
| | | | | |
| | **NET INCOME:** | $ 6,342 | $ 9,970 | $ 12,854 |

\* - "Capital Expenditures" made in 2013 from Debtors' exempt Fifth Third Bank savings account